UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LEONARD L. MYREE | ) | |
| | ) | |
| v. | ) | 1:05-cv-28 \ 1:01-cr-88 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Defendant Leonard L. Myree ("Myree") has filed a pro se motion for post-conviction relief pursuant to 28 U.S.C. § 2255 [Court File No. 1]. Myree was convicted by a jury on all three counts of an indictment charging him in two counts as a felon in possession of a firearm and one count as a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

Myree claims the 2001 rather than the 1999 United States Sentencing Guidelines ("USSG") were used to calculate his sentence; counsel was ineffective; the traffic stop and arrest were not based on probable cause; and his sentence violates *Apprendi*. The government opposes the § 2255 motion [Court File No. 6].

For the reasons which follow, the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED**.

**I.     Procedural Background**

On June 23, 2001, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a three-count indictment charging Myree, a convicted felon, with three counts of violating 18 U.S.C. § 922(g)(1). Count One of the indictment charged that Myree, a convicted felon, possessed two firearms on July 2, 1999, that had been shipped in interstate

1

commerce in violation of 18 U.S.C. § 922(g)(1). Count Two charged that Myree possessed a firearm on May 25, 2000, in violation of 18 U.S.C. § 922(g)(1). Count Three charged that Myree possessed approximately five rounds of ammunition in violation of 18 U.S.C. § 922(g)(1).

Myree exercised his right to a trial in this matter which began on October 18, 2001. A jury found him guilty on all Counts contained in the Indictment. On February 11, 2002, Myree was sentenced to a total term of 235 months imprisonment–78 months on each of Counts One and Two, and a term of 79 months on Count Three, all to be served consecutively. Myree pursued a direct appeal from the judgment of conviction. The United States Court of Appeals for the Sixth Circuit vacated Myree's sentence and granted Myree's motion to remand. *See United States v. Myree*, No. 02-5332 (6th Cir. February 3, 2003), 2004 WL 435424. The Sixth Circuit concluded the Court erred in entering individual sentences on Counts II and III since the simultaneous possession of a firearm and ammunition merge at sentencing.

Upon remand, a new presentence investigation report was prepared using the 1999 version of the USSG. At the resentencing hearing, the district court sentenced Myree to a total of 235 months–115 months on Count 1 consecutive to 120 months on Count 2. Based on the Sixth Circuit's direction in its remand order that Counts II and III merged at sentencing, the Court did not impose a sentence on Count III. On appeal, the Sixth Circuit affirmed Myree's convictions and sentences. *United States v. Myree*, No. 03-5923, 2004 WL 435424 (6th Cir., March 5, 2004). Myree's § 2255 motion was timely filed on January 12, 2005.

## II.   Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S.

780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Myree cannot use a § 2255 motion to litigate the issues that should have been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68 (1982), or Myree shows that he is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. at 622. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996).

### III. Facts

The following pertinent facts are taken from the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 9. On July 2, 1999, officers of the Chattanooga, Tennessee Police Department observed the defendant driving a vehicle in a suspicious manner and stopped him. As officers approached the defendant's vehicle, they observed a chrome revolver lying in the vehicle's floorboard. At this point, officers forced Mr. Myree from the vehicle at gun point. . . .
>
> 10. Officers searched the defendant's [] vehicle and recovered a chrome revolver as well as another revolver, and three ski masks. . . .
>
> 11. On May 25, 2000, the defendant and a female named Lorraine Michelle Brooks forced their way into the home of Ms. Yolanda Morgan. Holding Ms. Morgan at gun point, Mr. Myree demanded money from Ms. Morgan. When she refused, Mr. Myree tied Ms. Morgan's hands behind her[.] . . . During the search of the home, the defendant and Ms. Brooks discovered Ms. Morgan's six-year old daughter . . . While pointing his pistol at the six-year old, Mr. Myree ordered the child to give him the phone.
>
> 12. When the defendant and Ms. Brooks left the Morgan residence, they took

with them the cellular phone, $160 in cash, $40 in coins, a gold necklace, a gold bracelet, and a Sega game system. The items were valued at approximately $730.

13. Ms. Morgan freed herself once the defendant and Ms. Brooks left, and she called the police. Moments later, police arrested the defendant, Ms. Brooks, and another female, in the vehicle in which they were traveling. All of Ms. Morgan's stolen items were recovered. Officers also confiscated a loaded Makarov .380 caliber semi-automatic pistol. Mr Myree states the gun was found in a locked glove box.

PSR at 3-4.

At the June 23, 2003 re-sentencing hearing, the Court found that Myree's criminal history category was V. Myree's total offense level was 33. Myree's offense level of 33, combined with his criminal history category of V, resulted in a sentencing range of 210 to 240 months imprisonment. Myree was sentenced to 235 months of imprisonment, to be followed by three (3) years of supervised release.

## IV. Analysis

Myree's § 2255 motion to vacate contains four claims. Myree claims that his sentence was calculated using the incorrect edition of the USSG; counsel was ineffective; the initial police stop and arrest was not based upon probable cause; and his sentence was unconstitutionally enhanced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny–*Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). The Court will address each claim separately as raised by Myree.

### A. Incorrect Sentencing Guidelines Edition

Myree claims his sentence was calculated using the incorrect Edition of the Guidelines Manual. Myree is incorrect in this assertion as this issue was raised on his initial direct appeal and

corrected during his second sentencing hearing. According to Myree, his sentence should have been calculated using the 1998-2000 Guidelines rather than the 2001 Guidelines.

During Myree's initial sentencing the 2001 Edition of the Sentencing Guidelines, which were in effect at the time of sentencing and provided for a higher sentencing range than those in effect at the time the crimes were committed, were used to calculate his sentence. However, upon remand, the prosecution and defense agreed the 1999 version of the Sentencing Guidelines should have been used rather than the 2001 version. Thus, Myree's sentence was re-calculated using the Guidelines in effect as of July 1999. Accordingly, Myree is not entitled to any relief on his claim that his sentence is based on the incorrect version of the Sentencing Guidelines. This claim will be **DENIED**.

### B. Ineffective Assistance Counsel

Myree claims counsel was ineffective for failing to present witnesses vital to his defense, investigate prosecution and defense witnesses, challenge sleeping jurors, and challenge the jury and jury selection. After discussing the applicable law, the Court will analyze each claim.

To establish ineffective assistance of counsel, Myree must demonstrate a deficiency by counsel which rendered counsel's assistance objectively unreasonable and establish the deficient performance resulted in prejudice to him. The Supreme Court, in *Strickland v. Washington,* 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.*

6

at 687-88; *see also Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay,* 970 F.2d 1575, 1579-80 (6th Cir. 1992).

   1.   *Failure to Investigate Witnesses*

Myree claims he notified trial counsel of the facts of the case and of witnesses that would testify in his defense. Specifically, Myree contends he explained to counsel that Yolanda Morgan, the victim, and Chris Parker, her boyfriend, had cheated acquaintances of Myree's on a drug deal and claimed Myree and Brooks robbed her in order to cover up her dealings. Myree contends Brooks, Adrienne Crump, and Lynette Harris came to Tennessee to buy marijuana. "Myree had spoken with Parker the day before the robbery to connect the women with a marijuana purchase" [Court File No. 2, at 8]. According to Myree, Parker and Morgan took the women's money but did not give them marijuana. Instead, Morgan concocted the robbery story.

Myree claims counsel refused to investigate the case as a drug-deal-gone-bad case and Chris Parker's history of criminal charges and drug use.[1] Myree contends that even though Morgan testified she sold candy and sodas out of her home, that was really the code word for drugs and he informed counsel of that fact.[2]

---

   [1]   The Court observes that the victim testified Chris Parker is a convicted drug dealer [Trial Transcript, at 57-58].

   [2]   The Court notes that defense counsel did ask Ms. Morgan whether she sold drugs and whether this was a drug-deal-gone-bad, both of which she denied [Trial Transcript, at 51-56].

Myree claims Carolyn Birt, Morgan's next-door neighbor, could have testified that Myree had not been coming to Birt's residence for the last two weeks as Morgan claimed. Ms. Birt could have testified she saw Myree and Parker talking in a familiar manner to counter the testimony that Myree had never spoken to Parker. Carolyn Birt's brother, Michael Birt, could have testified they Myree did not stay in the house after Carolyn moved out and did not sleep in an empty house and that Myree was not homeless at the time.[3] Myree states a defense investigator interviewed Morgan, but no other defense witness was interviewed. Myree claims Carolyn Birt appeared at trial but she was not called as a witness.

Myree has failed to meet either prong of the ineffective assistance of counsel test. Myree has not provided any affidavits from the witnesses he claims could have testified on his behalf. Although Myree has submitted a list of witnesses and speculated about the testimony they would have offered, he has not submitted reliable proof that they would have in fact, provided such testimony. Myree's witnesses and their speculative testimony do not lead this Court to the conclusion that the outcome of his trial is unreliable. Even if the alleged marijuana purchasers and neighbors testified as Myree claims they would, that still does not explain how he was in possession of the items stolen from Morgan's residence, thus, contradicting his theory that Morgan fabricated the robbery. Moreover, this claim appears to be irrelevant for purposes of this conviction since this was not a trial for robbery, but was only a trial on the charge of Myree, a convicted felon, being in possession of a firearm and ammunition. Myree was a passenger in a vehicle with three females when he was stopped subsequent to the robbery. The alleged victim of the robbery described the gun she claimed Myree used to rob her as a medium size black gun with a clip in it and identified

---

[3] The Court did not find this testimony in the trial transcript.

the exhibit at trial (Trial Transcript ("T.T."), p. 41-42). In addition, she identified the property found in Myree's possession at the time of his arrest as her children's property (T.T., p. 43).

Neighbors provided a description of the vehicle used in the robbery and told the police the party had borrowed a dime from them earlier that day to buy something from Ms. Morgan's house and they later saw the party running from the victim's house with what appeared to be a gun in his hand (T.T., at 69). Within ten to fifteen minutes after the alleged robbery a vehicle fitting the described robbery vehicle was stopped and Myree was a passenger in the back seat. The victim was taken to the vehicle and she identified Myree and one of the female passengers as the robbers (T.T. p. 66-71). According to the investigating officer, the victim did not know Myree's name until someone else told her his name (T.T. p. 72). Moreover, when the vehicle was stopped, Myree was in the back seat but when the officer asked where the gun was Myree responded that it was in the glove compartment (T.T., p. 76). The game belonging to the victim's children was in the back floorboard and the victim's jewelry was under the front seat (T.T., p. 78).

The Court observes that Myree does not claim that any one will testify that he did not possess the weapon and ammunition or that he did not participate in the robbery. Moreover, assuming this is a drug-deal-gone-bad, that does not negate or outweigh the evidence demonstrating Myree was involved in the armed robbery and possessed a weapon and ammunition.

Myree's claim that Ms. Birt would have testified he had been talking amicably with Parker does not contradict Morgan's testimony because she testified that Parker was speaking with Myree and then Parker returned to the house and informed her Myree wanted to buy some cold drinks (T.T., p. 26). Moreover, the testimony Ms. Birt would have allegedly provided does not demonstrate

9

counsel was ineffective for failing to call her or that Myree suffered any prejudice as a result of counsel's failure to present Ms. Birt as a defense witness.

To prove prejudice due to his trial attorney's failure to investigate and present potential witnesses, Myree must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial. *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994); *Cross v. O'Leary*, 896 F.2d 1099, 1100 (7th Cir. 1990) ("speculation about what unidentified person might have said cannot establish the 'prejudice' that, under *Strickland v. Washington*, is part of the petitioner's burden."). In this case, even if counsel had called the witnesses identified by Myree and assuming the witnesses would testify as Myree claims, which Myree has not established, he still has not demonstrated that their testimony would have probably changed the outcome of the trial.

### 2. *Failure to Investigate Sleeping Jurors*

Likewise, Myree's claim that counsel did not object when it was allegedly brought to his attention that two jurors were falling asleep during trial fails to provide a basis for finding counsel's representation was deficient or that counsel's omission prejudiced petitioner. *See United States v. Sherrill*, 388 F.3d 535, 537-38 (6th Cir. 2004) (allegation of "juror inattention" must be affirmatively proven). Myree claims his sister, brother, and girlfriend observed "a couple of jurors falling asleep during trial, and brought the situation to counsel's attention during a recess. Counsel told them not to worry about it and 'let's see how it goes.'" [Court File No. 2, at 9].

Myree does not identify the alleged juror's who were falling asleep, the length of time they slept, or provide affidavits from the witnesses who allegedly observed these witnesses sleeping. There is no information as to how long the jurors were allegedly sleeping or what portion of the trial

they allegedly missed. Myree's claim lacks sufficient specificity to require further consideration. "It is not necessarily an unreasonable strategy for a defense attorney to decline to object to juror inattentiveness, especially when the jurors may have been inattentive to the government's case." *Arispe v. United States*, No. Civ. 03-10124-BC, 2005 WL 3132211, *2 (E.D. Mich. Nov. 21, 2005). Myree's failure to provide any factual support for this claim has resulted in his failure to show defective performance or prejudice. Accordingly, he is not entitled to any § 2255 relief on this claim.

### 3. *Jury Selection Claim*

Although Myree's § 2255 motion does not raise a claim that trial and appellate counsel were ineffective for failing to challenge the composite of the jury and for failing to challenge the exclusion of the only African-American juror, he did include such a claim in his supporting memorandum. Myree submits the following claim:

> Myree's petit jury panel had one African-American person out of a likely panel of 36, equaling .028% of the panel, far below the average ratio of African-American in the overall district population. The one African-American person was not utilized at all, but dismissed first out of the panel.
>
> . . .
>
> By the extreme scarcity, this group was underrepresented. By that [sic]the jury had only one African-Americans [sic] in the entire panel from which to choose, and none on the jury itself, demonstrates at least a prima facie case of substantial disparity and statistical significance, and of systematic exclusion in the process, thereby denying Alexander[4] a fair cross-section of the community in his jury.

---

[4] Although Myree's memorandum refers to "Alexander," the Court presumes Myree is making this argument in relation to his jury.

But for counsel's unprofessional errors in not raising a *Batson* claim at trial and preserving the issue for appeal, there exists a reasonable probability the outcome of the proceeding would have differed in Alexander's favor.

(Court File No. 2, p. 22).

### a. Batson Claim

Presumably Myree is claiming there is a reasonable probability that the outcome of his criminal proceedings would have been different had counsel raised a *Batson*[5] claim at trial and presented the issue on appeal. The Court follows a three step process when analyzing a *Batson* claim.

First, Myree must make a *prima facie* showing that the prosecutor removed a potential juror for a discriminatory reason. If Myree makes this showing, the second step requires the prosecutor to articulate a nondiscriminatory reason for the removal. If the prosecutor does so, the third step requires the trial court to determine whether Myree has proven purposeful discrimination. *United States v. Lucas*, 357 F.3d 599, 609 (6th Cir. 2004).

Under *Batson*, to make out a prima facie case of purposeful discrimination, Myree must fulfill three requirements. First, Myree has to prove he was a member of a cognizable racial group. Second, Myree must demonstrate the prosecutor used peremptory challenges to remove from the venire members of Myree's race. Third, the circumstances surrounding the removal must raise an inference that the prosecutor excluded prospective jurors from the petit jury because of their race. *United States v. Watford*, 468 F.3d 891, 911-12 (6th Cir. 2006). Myree can establish he is a member of a cognizable racial group, as African-Americans have been recognized as a distinctive

---

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986) (The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of race).

12

group. *See Lockhart v. McCree*, 476 U.S. 162, 175 (1986). Myree claims the one African-American juror was removed based on the government's challenge, thus fulfilling the second requirement to present a prima facie case of purposeful discrimination. However, Myree has not fulfilled the third requirement as he has not raised an inference that the juror was excluded based on race. The fact that the government excluded the sole black member of the jury venire, without more, does not make out a prima facie case. *See United States v. Esparsen*, 930 F.2d 1461, 1467 (10th Cir. 1991) ("Although *Batson* prohibits striking even one juror based on racial grounds, it does not suggest that the exclusion of jurors of a cognizable race automatically creates a prima facie case of discrimination"). Myree has not provided any relevant information which would raise an inference that the government used race to exclude the potential juror. Accordingly, Myree's allegation of ineffective assistance of counsel for failing to raise a *Batson* claim lacks merit.

### b. *Composition of Jury Venire*

To the extent Myree claims counsel was ineffective for failing to challenge the composition of the jury venire itself, he has failed to state a claim. A criminal defendant has a Sixth Amendment right to a jury venire, from which the petit jury is drawn, that represents a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). However, no requirement is imposed that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538 (citations omitted).

To establish a Sixth Amendment violation, Myree must establish that the group alleged to be excluded is a "distinctive" group in the community; the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and this under representation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979).

As previously discussed, African-Americans have been recognized as a distinctive group, thus, Myree could establish the first requirement. *See Lockhart v. McCree*, 476 U.S. 162, 175 (1986). However, Myree has not provided any facts which would establish that the jury venire from which his petit jury was chosen did not represent a fair cross section of the community nor has he shown that the jury selection procedure excluded distinctive groups or was not racially neutral. The Sixth Circuit has rejected the argument that a particular jury panel containing no African-Americans establishes that the jury venire did not represent a fair cross section of the community. Rather, the Sixth Circuit requires defendants "'must show more than their particular panel was unrepresentative,' and suggested that defendants would need to provide evidence that members of a race were under-represented in other jury pools in that district during the relevant time period." *United States v. Clark*, No. 02-6251, 2004 WL 2299452, *5 fn. 1 (6th Cir., Oct. 13, 2004) (citations omitted), *vacated on other grounds*, 545 U.S. 1101 (2005). There is nothing in the record from which the Court can infer that this under-representation is due to systematic exclusion of the group in the jury-selection process. Accordingly, the record before the Court reflects no basis upon which Myree's attorney could have objected to the composition of the jury panel and his failure to do so did not constitute ineffective assistance of counsel.

In sum, Myree has failed to demonstrate counsel was ineffective or that he suffered any resulting prejudice due to counsels representation. Myree's failure to demonstrate trial counsel was ineffective under the standards for such a claim as delineated by the Supreme court in *Stickland v. Washington*, 466 U.S. 668 (1984) prohibits this Court from awarding him any relief on this claim.

### C.     Probable Cause to Stop and Arrest

In his third claim Myree attacks Count One of the indictment asserting the police lacked probable cause to stop him on July 2, 1999, at 1:30 a.m. Contrary to the arresting officer's sworn testimony that he stopped Myree for failing to stop at the stop sign, Myree asserts he stopped at the stop sign. The arresting officer's July 2, 1999, report reflected Myree was stopped for running a stop sign but a later report, dated August 5, 1999, stated Myree was stopped for a driver's license check. However, the officer explained the second report, where he mistakenly referenced a driver's license check, was completed several weeks after the stop, subsequent to testifying about the incident before the grand jury (Suppression Transcript "S.T.", p. 22-23).

Myree is attempting to relitigate the suppression motion which the district court denied after an evidentiary hearing. This Court denied Myree's motion to suppress finding that based on the sole proof before it-that of the police officer-there was a traffic violation for which there was a stop and the officer observed the weapon when he approached the vehicle to question the driver, Myree (S.T., at 49).

The suppression issue is not properly raised in this § 2255 proceeding as a § 2255 motion is not a substitute for a direct appeal. The suppression issue should have been raised on direct appeal and issues that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477 n. 10 (1976). To the extent Myree

15

contends ineffective assistance of appellate counsel provides cause to excuse his default, he has failed to state

a claim because there is nothing before this Court to indicate appellate counsel was ineffective for failing to raise such an argument on direct appeal.

The sole proof before the Court was Officer Floyd's testimony. The Court concluded that although Officer Floyd could not recall all of the details of the traffic stop, he plainly recalled the vehicle did not stop at the stop sign. Therefore, Officer Floyd had the requisite articulable suspicion to effect the stop. As Officer Floyd approached the vehicle, he observed a chrome revolver on the floorboard of the driver's side, where Myree was sitting. Accordingly, his arrest of Myree pursuant to Tennessee state law prohibiting the unlawful carrying or possession of a firearm was supported by probable cause and Myree has failed to disclose a legal basis for raising the claim on appeal that was likely to prevail. Consequently, Myree has failed to demonstrate counsel was ineffective for failing to raise the suppression issue on appeal and this claim will be **DENIED**.

        **D.**     *Apprendi* **Claim**

Myree, relying upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), challenges the sentencing enhancements which he claims raised his base offense level of 24 to 33. In effect, Myree asserts his sentence is unconstitutional because the court imposed a sentence based upon judge-found facts. Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (The Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), Myree maintains the enhancements

used to increase his sentence were not identified in the indictment and never admitted by him or proved beyond a reasonable doubt to a jury.[6]

As an initial matter, the Court observes *Apprendi* does not apply retroactively to initial § 2255 motions, *Goode v. United States,* 305 F.3d 378, (6th Cir. 2002), and this claim is procedurally defaulted as it should have been raised in this Court during Myree's criminal sentencing proceedings or on direct review since *Apprendi* was decided prior to Myree's criminal proceedings. Therefore, Myree must demonstrate cause and prejudice to excuse his procedural default. Myree has not submitted any allegations or proof of cause and prejudice to excuse his procedural default. Assuming Myree claims counsel was ineffective for failing to raise this *Apprendi* claim and assuming he could demonstrate deficient performance by counsel, which this Court does not find, Myree has failed to demonstrate he suffered any prejudice as a result of counsel not raising this *Apprendi* claim. Therefore, Myree is procedurally barred from pursuing this claim. Nevertheless, Myree is not entitled to § 2255 relief on the merits of this claim as there was no *Apprendi* error.

In cases where a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction, there is no *Apprendi* error. *Harris v. United States*, 536 U.S. 545, 565

---

[6] To the extent Myree attempts to argue *Blakely v. Washington*, 542 U.S. 296 (2004) (invalidated a Washington State criminal sentence because the facts supporting a sentence enhancement were neither admitted by the defendant nor found by a jury in violation of the Sixth Amendment right to a jury trial) or *United States v. Booker*, 543 U.S. 220 (2005) (Extending the holding of *Blakely* to the United States Sentencing Guidelines, the Supreme Court held the mandatory nature of the federal sentencing guidelines rendered them incompatible with the Sixth Amendment guarantee to the right to a jury trial) offer him relief, he is simply incorrect. Neither *Blakely* nor *Booker* offer Myree any relief as they were decided after his conviction and sentence became final, and neither case is retroactively applicable on collateral review.

(2002) ("Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries-and without contradicting *Apprendi*"). As discussed below, Petitioner is not entitled to relief under *Apprendi* because his sentences did not exceed the statutory maximum of 120 months on each count.

The Court observes that Myree's sentence did not violate the *Apprendi* principles as Myree's convictions subjected him to a maximum sentence of 10 years imprisonment on each of the two counts of felon in possession of a firearm in accordance with § 924(a)(2) which imposes a sentence of ten years for violation of § 922(g)(1). Myree's 115 month sentence on Count One and his 120 month sentence on Count Two do not exceed the statutory maximum sentence. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In the instant case, Counts One and Two charged Myree as a felon in possession of a firearm. Each Count is sufficient to support a sentence pursuant to 18 U.S.C. § 922(g)(1) which sets a statutory maximum sentence of ten years imprisonment on each count. The Court imposed sentences within the statutory maximum on each of the counts for which Petitioner had been convicted. The total sentence exceeded the statutory maximum only because the Court elected to impose consecutive, rather than concurrent sentences. However, consecutive

sentences in the *Apprendi* context are irrelevant to the Court's determination of whether the sentencing court impermissibly exceeded the statutory maximum sentence as to any particular count. *See Apprendi,* 530 U.S. at 474; United *States v. White*, 240 F.3d 127, 135 (2nd Cir. 2002) (finding the district court did not exceed the maximum for any individual count). As Myree was not sentenced in excess of a ten year term on either count, there is no *Apprendi* error.

Myree's sentence of 115 months on count One and 120 months on Count Two fell within the statutory ten year sentence and do not violate *Apprendi* as neither sentence exceeds the 120 year maximum sentence under § 924(a)(2). Therefore, Myree's criminal proceeding did not involve an *Apprendi* error because his sentences do not exceed the statutory maximum sentence permitted by statute as Myree was sentenced within the confines identified in 18 U.S.C. § 924 (a)(2) on each count. Because Myree's sentence was not in violation of *Apprendi*, neither his trial counsel nor appellate counsel were ineffective for failing to raise the issue during sentencing or on appeal.

As to Myree's *Blakely* claim, petitioner's judgment was final prior to the Court's decision in that case.[7] Moreover, *Blakely* did not apply to the federal sentencing guidelines in this circuit until the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). The Sixth Circuit has held that a petitioner's *Blakely* claim is now governed by *Booker*, and that the new *Booker* rule does not apply retroactively on collateral review. *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005). Consequently, the failure of Myree's trial and appellate counsel to raise

---

[7] Myree's sentence was affirmed on appeal on March 5, 2004, and the judgment became final on June 3, 2004, upon expiration of the ninety-day period within which Myree could have filed a petition for writ of certiorari. *See Clay v. United States*, 537 U.S. 522 (2003) (one-year statute of limitations begins to run with the expiration of ninety-day period within which petitioner could have filed for certiorari review). *Blakely* was decided on June 24, 2004, and *Booker* was decided on January 12, 2005.

objections based on *Blakely* or *Booker,* cases decided subsequent to Myree's judgment becoming final, did not constitute deficient assistance of counsel.

Accordingly, Myree is not entitled to § 2255 relief on his *Apprendi/Blakely/Booker* allegation.

V.  **Conclusion**

For the reasons set forth above, the Court concludes Myree is not entitled to any relief under 28 U.S.C. § 2255 as his convictions and sentences are not in violation of the Constitution or laws of the United States. A separate judgment will enter **DENYING** Myree's § 2255 motion [Court File No. 1].

An appropriate judgment will enter.

        */s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE